IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JULIE Z., | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | No.    **19-cv-6930** |
| v. | ) | |
| | ) | **Magistrate Judge Jeffrey I. Cummings** |
| KILOLO KIJAKAZI, Acting | ) | |
| Commissioner of Social Security,[1] | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION AND ORDER

Julie Z. ("Claimant") brings a motion for summary judgment to reverse and remand the final decision of the Commissioner of Social Security (the "Commissioner") denying her claims for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). The Commissioner brings a cross-motion for summary judgment seeking to uphold its decision to deny benefits. The parties have consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. §636(c). This Court has jurisdiction to hear this matter pursuant to 42 U.S.C. §§405(g) and 1383(c)(3). For the reasons stated below, Claimant's motion for summary judgment (Dckt. #24) is granted, and the Commissioner's motion for summary judgment (Dckt. #30) is denied.

---

[1] In accordance with Internal Operating Procedure 22 - Privacy in Social Security Opinions, the Court refers to Claimant only by her first name and the first initial of her last name. Furthermore, pursuant to Federal Rule of Civil Procedure 25(d), the Court has substituted Acting Commissioner of Social Security Kilolo Kijakazi as the named defendant.

I.      **BACKGROUND**

A.      **Procedural History**

On August 23 and 29, 2016, respectively, Claimant filed for DIB and SSI, alleging disability beginning on August 15, 2015. (Administrative Record ("R.") 20, 169-70). Claimant's application was denied initially and upon reconsideration. (R. 20). Claimant filed a timely request for a hearing, which was held on June 1, 2018, before an Administrative Law Judge ("ALJ"). (R. 20, 92). On September 5, 2018, the ALJ issued a written decision denying Claimant's application for benefits. (R. 20-28). Claimant filed a timely request for review with the Appeals Council. On August 29, 2019, the Appeals Council denied Claimant's request for review, leaving the decision of the ALJ as the final decision of the Commissioner. (R. 1-3). This action followed.

B.      **The Social Security Administration Standard**

In order to qualify for disability benefits, a claimant must demonstrate that she is disabled. An individual does so by showing that she cannot "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). Gainful activity is defined as "the kind of work usually done for pay or profit, whether or not a profit is realized." 20 C.F.R. §404.1572(b).

The Social Security Administration ("SSA") applies a five-step analysis to disability claims. 20 C.F.R. §404.1520. The SSA first considers whether the claimant has engaged in substantial gainful activity during the claimed period of disability. 20 C.F.R. §404.1520(a)(4)(i). It then determines at step two whether the claimant's physical or mental impairment is severe and meets the twelve-month duration requirement noted above. 20 C.F.R. §404.1520(a)(4)(ii).

At step three, the SSA compares the impairment or combination of impairments found at step two to a list of impairments identified in the regulations ("the listings"). The specific criteria that must be met to satisfy a listing are described in Appendix 1 of the regulations. 20 C.F.R. Pt. 404, Subpt. P, App. 1. If the claimant's impairments meet or "medically equal" a listing, the individual is considered disabled, and the analysis concludes. If the listing is not met, the analysis proceeds to step four. 20 C.F.R. §404.1520(a)(4)(iii).

Before addressing the fourth step, the SSA must assess a claimant's residual functional capacity ("RFC"), which defines her exertional and non-exertional capacity to work. The SSA then determines at step four whether the claimant is able to engage in any of her past relevant work. 20 C.F.R. §404.1520(a)(4)(iv). If the claimant can do so, she is not disabled. *Id.* If the claimant cannot undertake her past work, the SSA proceeds to step five to determine whether a substantial number of jobs exist that the claimant can perform in light of her RFC, age, education, and work experience. An individual is not disabled if she can do work that is available under this standard. 20 C.F.R. §404.1520(a)(4)(v).

### C. Claimant's Arguments for Remand

Claimant urges this Court to reverse and remand the ALJ's decision to deny her an award of benefits based on her arguments that: (1) the ALJ's conclusion that Claimant's depression was not a medically determinable impairment was not supported by substantial evidence; (2) the ALJ's analysis of Claimant's treating doctor's opinion was legally insufficient and the decision to discount that opinion was not supported by substantial evidence; (3) the ALJ's residual functional capacity (RFC) assessment was not supported by substantial evidence; and (4) the ALJ's analysis of Claimant's subjective symptoms was legally insufficient. Although the Commissioner argues, among other things, that the ALJ properly determined that Claimant's

depression was not a medically determinable impairment, the Court concludes that the ALJ's

finding on this issue is not supported by substantial evidence and that remand is required for this

reason.  Accordingly, the Court will focus on the evidence and analysis related to the issue of

Claimant's depression.

        **D.**       **The Evidence Presented to the ALJ**

Claimant seeks disability benefits for limitations stemming from degenerative disc

disease of the lumbar spine; degenerative disc disease of the cervical spine with radiculopathy;

fibromyalgia; osteopenia; chronic obstructive pulmonary disease; kidney stones; and depression.

        **1.**       **Evidence from Claimant's Treating Physicians**

Claimant was seen at The Psychology Center, Inc. of Chicago ("The Psychology

Center").  A form signed by Claimant and her therapist on September 18, 2017, indicated that

Claimant's symptoms included "sadness (triggered by medical condition)."  (R. 643, 645).  That

form also indicated that without treatment, the following symptoms may remain the same or get

worse: increase in stress or anxiety levels, increase in depression, increase in personal distress or

dissatisfaction.  (R. 643).  Additionally, medication would possibly be considered later.  (*Id.*).

Claimant was recommended by her doctor for treatment in the areas of "depression treatment,"

"anxiety management," "relaxation skills," and "chronic pain."  (R. 644-45).

The Psychology Center treatment progress notes dated August 7 and November 30, 2017,

stated a "Diagnosis" of "Dep. D/O due to Med. Cond."  (R. 646, 648).  Additionally, on August

7, August 27, September 18, October 2, and October 30, 2017, Claimant's anxiety was rated a

five on a scale of one to ten and her depression was rated an eight  on a scale of one to ten.  (R.

646-47).  The November 30 and December 11, 2017 treatment progress notes indicated that

Claimant's anxiety remained at a level five, but that her depression level reduced slightly to a

seven.  (R. 648).  The treatment progress notes were all signed by a "PSY.D" (whose signature cannot be deciphered) and initialed by a co-therapist.  (R. 646-48).

### 2.        Evidence from Claimant's Testimony

Claimant appeared with counsel at the June 1, 2018 hearing before the ALJ.  (R. 92, 94). Claimant offered the following testimony.

At the time of the hearing, Claimant was fifty-seven years old with a ninth-grade education.  (R. 102-03).  She had previously worked as a waitress.  (R. 103-04).  Claimant stated that in July 2015, she had sustained an injury while working at Chi Tung Restaurant, where she took phone orders and was responsible for certain side work.  (R. 107-10, 126).  Specifically, Claimant had injured her back while reaching into the washing machine, which required her to "take [her] feet off the ground" to retrieve a hand towel.  (R. 110).  Claimant testified that her "back locked up, and . . .  gave out, and I haven't been the same since."  (*Id.*).  Claimant filed a Workers' Compensation claim and subsequently quit her job on June 28, 2016, because she "hurt" and "couldn't do it anymore."  (R. 108-09, 127, 130).

Claimant stated that she received treatment for her back from her primary care doctor and had an EMG test.  (R. 110).  She described being in pain every day, elaborating that the pain "travels," meaning it could be in her feet, leg, hips, or outer thigh, and feels "like a knife in there just stabbing and turning."  (R. 112).  Claimant received epidural treatments and takes medication for the pain.  (*Id.*).  She also consulted a neurologist, who said she did not need surgery and referred her for pain management.  (R. 113).

Claimant further testified that she received counseling for depression at The Psychology Center with a counselor named Andrea.  (R. 115-16).  This counseling occurred once a week or every other week from August to November 2017.  (R. 116).  Claimant stated that she has

problems with thinking and memory. (R.125). In particular, Claimant testified that there are times when she "just can't think" and she has trouble remembering things every day. (R. 125-26). Claimant received treatment at The Psychology Center for "everything" that "she was telling her [counselor]" about, including her depression and her memory and thinking problems. (R. 138).

### 3. Evidence from Vocational Expert's Testimony

A vocational expert ("VE") also offered testimony. The VE first categorized Claimant's past work as a food server, medium as performed, but generally performed light with an SVP of three, making it semiskilled. (R. 142).

Next, the ALJ asked the VE to consider an individual who was fifty-four years of age at the alleged onset date, is currently fifty-seven years of age, with a ninth-grade education, and work experience as a food server, who has the capacity for light work as defined in the regulations; with frequent climbing and crawling; occasional stooping; frequent finger handling and fingering with the hands, bilaterally; and no concentrated exposure to dust, fumes, gases, or poor ventilation. (R. 142). The VE testified that the past work as a food server would be available as it is generally performed. (R. 142-43). The VE additionally identified a variety of other light level jobs the individual could perform such as sales attendant, order caller, and mail clerk. (R. 143). If the individual were limited to occasional handling, that would rule out the past work and the other jobs listed. (*Id.*). If the individual were limited to the original hypothetical and occasional reaching, that would also rule out the past work and the other three jobs. (R. 144). If the individual used a cane for ambulation, that would also rule out the past work and all the three other jobs. (R. 144-45).

## II.     THE ADMINISTRATIVE LAW JUDGE'S DECISION

First, the ALJ determined that Claimant met the insured status requirements of the Social

Security Act through September 30, 2020.  (R. 22).  The ALJ then applied the five-step inquiry

required by the Act in reaching her decision to deny Claimant's request for benefits.  At step one,

the ALJ found that Claimant had not engaged in substantial gainful activity since her application

date.  (*Id.*).  Next, at step two, the ALJ determined that Claimant suffered from the severe

impairments of degenerative disc disease of the lumbar spine and degenerative disc disease of

the cervical spine with radiculopathy, fibromyalgia, osteopenia, and chronic obstructive

pulmonary disease ("COPD").  (*Id.*).  The ALJ considered Claimant's kidney stones but found

this impairment to be non-severe.  (R. 23).  The ALJ further found that although Claimant

"alleged" depression at the hearing and the record showed she received counseling, "there [wa]s

no diagnosis [of depression] in these records or any other records."  (R. 23).  The ALJ then

determined that "depression [wa]s not a medically determinable impairment."  (*Id.*).

At step three, the ALJ concluded that Claimant did not have an impairment or

combination of impairments that met or medically equaled one of the Commissioner's listed

impairments.  *See* 20 C.F.R. Part 404, Subpart P, App. 1.  The ALJ went on to assess Claimant's

residual functional capacity ("RFC"), ultimately concluding that she had the RFC to perform

light work as defined in 20 C.F.R. §416.967(b),[2] except frequent climbing and crawling,

occasional stooping, frequent handling and fingering with the hands bilaterally, and no

concentrated exposure to dusts, fumes, gases, or poor ventilation.  (R. 23-27).  At step four, the

ALJ determined that Claimant was capable of performing her past relevant work as a food

---

[2] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds . . . .  [A] job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls."  20 C.F.R. §404.1567(b).

server. (R. 28). Therefore, the ALJ found that Claimant was not under a disability from the application date through the date of the decision. (R. 28).

### III.    STANDARD OF REVIEW

A claimant who is found to be "not disabled" may challenge the Commissioner's final decision in federal court. Judicial review of an ALJ's decision is governed by 42 U.S.C. §405(g), which provides that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. §405(g). "Substantial evidence is not a high threshold: it means only 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Karr v. Saul*, 989 F.3d 508, 511 (7th Cir. 2021), *quoting Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019) (internal quotation marks omitted). The Commissioner's decision must also be based on the proper legal criteria and free from legal error. *Scheck v. Barnhart*, 357 F.3d 697, 699 (7th Cir. 2004); *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002).

A court reviews the entire record, but it does not displace the ALJ's judgment by reweighing the facts, resolving conflicts, deciding credibility questions, by making independent symptom evaluations, or by otherwise substituting its judgment for that of the Commissioner. *McKinzey v. Astrue*, 641 F.3d 884, 889 (7th Cir. 2011); *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008). Instead, the court looks at whether the ALJ articulated an "accurate and logical bridge" from the evidence to her conclusions. *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008). This requirement is designed to allow a reviewing court to "assess the validity of the agency's ultimate findings and afford a claimant meaningful judicial review." *Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002). Thus, even if reasonable minds could differ as to whether the claimant

8

is disabled, courts will affirm a decision if the ALJ's opinion is adequately explained and supported by substantial evidence. *Elder*, 529 F.3d at 413 (citation omitted).

## IV. ANALYSIS

### A. The ALJ's finding that Claimant's depression is not a medically determinable impairment is not supported by substantial evidence.

At step two, the ALJ determines whether a claimant has a medically determinable physical or mental impairment(s). 20 C.F.R. §404.1521. An impairment "must result from anatomical, physiological, or psychological abnormalities that can be shown by medically acceptable clinical and laboratory diagnostic techniques." *Id.* In other words, a physical or mental impairment "must be established by objective medical evidence from an acceptable medical source." *Id.*; *Shirley R. v. Saul*, 1:18-cv-00429-JVB, 2019 WL 5418118, at *2 (N.D.Ind. Oct. 22, 2019). Thus, an impairment cannot be based solely on the claimant's testimony; rather, the burden rests with the claimant to submit objective medical evidence of such an impairment. 20 C.F.R. §404.1521; *Gladney v. Saul*, 857 Fed.Appx. 235, 238 (7th Cir. 2021) (citing *Scheck v. Barnhart*, 357 F.3d 697, 702 (7th Cir. 2004)); *Ghiselli v. Colvin*, 837 F.3d 771, 776 (7th Cir. 2016) (burden of proof on the first four steps is on claimant).

Claimant asserts that the ALJ should have included depression among her medically determinable impairments. She relies on the records from The Psychology Center, which listed Claimant's "Diagnosis" in two places as "Dep. D/O due to Med. Condition," thus providing the requisite objective medical evidence of her depression. (R. 646, 648). The Commissioner – who asserts that these two pages of the medical records are "mostly illegible" – admits that the above notation "might represent a diagnosis of depression." (Dckt. #31 at 3). The Court agrees that The Psychology Center records do, in fact, indicate that Claimant was diagnosed with depression.

Despite the fact that Claimant's attorney referred the ALJ to The Psychology Center's records (Exhibit 17F) during Claimant's testimony at the hearing, (R. 116), the ALJ found that there was no diagnosis of depression in Claimant's records and that her depression was not a medically determined impairment. (R. 23). This was a factual error that, in turn, caused the ALJ to disregard Claimant's depression when she determined Claimant's RFC. This was a second error because an ALJ must consider all of a claimant's medically determinable impairments (both severe and non-severe) when determining the claimant's RFC. *See, e.g., Richison v. Astrue*, 462 Fed.Appx. 622, 626 (7th Cir. 2012) ("An RFC determination must account for all impairments, even those that are not severe in isolation."); *Martinez v. Astrue*, 630 F.3d 693, 697-98 (7th Cir. 2011); *Vega v. Comm'r of Soc. Sec.*, 265 F.3d 1214, 1219 (11th Cir. 2001). Consideration of all impairments is critical because "[e]ven if each problem assessed separately were less serious than the evidence indicates, the combination of them might well be totally disabling." *Martinez*, 630 F.3d at 698; *Parker v. Astrue*, 597 F.3d 920, 923 (7th Cir. 2010) ("The judge's failure to consider the cumulative effect of the impairments not totally disabling in themselves was an elementary error.").

Despite their admission that Claimant's medical records reflect a diagnosis of depression, the Commissioner contends that the ALJ was justified in finding that Claimant's depression was not medically determinable because she made only "minor mentions of depression" at the hearing and the evidence manifesting her depression was not "compelling." (Dckt. #31 at 3). Not so. A diagnosis of depression based upon what Claimant reported to her psychologist is "objective medical evidence" of an impairment. *Price v. Colvin*, 794 F.3d 836, 840 (7th Cir. 2015) (noting "psychiatric assessments normally are based primarily on what the patient tells the psychiatrist"). The ALJ – who acknowledged that claimant received counseling and complained

10

of sadness triggered by her medical condition – was not entitled to disregard the fact that

Claimant was diagnosed with depression, regardless of whether her depression was mild and

non-severe.[3] *See Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010) ("An ALJ has the

obligation to consider all relevant medical evidence and cannot simply cherry-pick facts that

support a finding of non-disability while ignoring evidence that points to a disability finding.").

Even non-severe depression can cause "mild limitations in daily activities, social functioning,

and in concentration, persistence, and pace" that must be reflected in a claimant's RFC. *See,*

*e.g., President v. Berryhill*, No. 17 C 4910, 2018 WL 4282053, at *3 (N.D.Ill. Sept. 7, 2018).

"Normally a failure to apply the correct legal standard requires [the court] to remand the

case to the ALJ for further proceedings." *Karr*, 989 F.3d at 513; *see also Vega*, 265 F.3d at 1219

("We agree with the reasoning of our sister circuits, as well as our prior case law, holding that

remands are required when an ALJ fails to consider properly a claimant's condition despite

evidence in the record of the diagnosis."). The Court finds that this normal rule should be

applied here because it is not convinced that the ALJ will reach the same result on remand once

the ALJ considers Claimant's diagnosis of depression and its impact on her RFC. *Karr*, 989

F.3d at 513 (an error is harmless only if the court is convinced that the ALJ would reach the

same result on remand).

### CONCLUSION

For the foregoing reasons, Claimant's motion for summary judgment (Dckt. #24) is

granted and the Commissioner's cross-motion for summary judgment (Dckt. #30) is denied. The

---

[3] To the extent that the ALJ could not read portions of the handwriting in Claimant's records from The
Psychology Center, she had "an obligation to clarify the record on this important point." *Brent v. Astrue*,
879 F.Supp.2d 941, 949 (N.D.Ill. 2012).

decision of the Commissioner is reversed, and the case is remanded for further proceedings

consistent with this Memorandum Opinion and Order.


**ENTERED:   May 23, 2022**

**Jeffrey I. Cummings**
**United States Magistrate Judge**